[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2007
THOMAS K. KAHN
CLERK

No. 06-12519
Non-Argument Calendar

_____

D. C. Docket No. 05-80011-CR-KLR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD LEE RAZZ,
a.k.a. Kilo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 10, 2007)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Ronald Razz appeals his convictions and life sentence for maintaining a

drug-involved premises (Count One), in violation of 21 U.S.C. § 856; possessing

with intent to distribute 50 grams or more of cocaine base (Count Two), in violation of 21 U.S.C. §§ 841(a)(1),(b)(1)(A) and 851; and possessing with intent to distribute 5 grams or more of cocaine base (Count Three), in violation of §§ 841(a)(1),(b)(1)(A) and 851. On appeal, Razz argues the district court erred in three ways: (1) by denying his motion to suppress incriminating statements he made both before and after he received Miranda[1] warnings; (2) by denying his motions for disclosure of the identity of the confidential informant ("CI"), whose controlled buys of cocaine base from Razz formed the basis of the search warrant of Razz's residence, and to produce the CI for an interview; and (3) by admitting testimony regarding the CI's controlled buys at trial.[2] After thorough review of the record and careful consideration of the parties' briefs, we affirm.

The parties are familiar with the relevant facts and we only summarize them here. During a series of dates in January 2005, officers observed the CI enter residences at Penny Lane and Stacey Street and exit the residences after purchasing about 10 grams of crack cocaine each time. These buys were used to obtain search warrants of both premises. The warrants were executed on February 3, 2005. Prior to the search of Razz's residence at Stacey Street, Federal Bureau of

---

[1]See Miranda v. Arizona, 384 U.S. 436 (1966).

[2]We are unpersuaded by Razz's constitutional challenges, under the Fifth, Sixth, and Eighth Amendments, to 21 U.S.C. § 851.

2

Investigation ("FBI") Special Agent John MacVeigh read the warrant to Razz and told Razz that if any drugs were found in the residence, both Razz and his wife, Tamika Simms, would be arrested, to which Razz responded that any narcotics in the house belonged to him, not Simms. Razz repeated his statement to another officer, Brian Hermanson, after the search had commenced. During the searches of Razz's residences on Penny Lane and Stacey Street, law enforcement discovered the following: seven boxes of baking soda; razor blades; plates, pots, pans, and bowls with cocaine residue on them; three metal spoons with cocaine residue on them; a digital scale; and loose rocks of crack cocaine. Upon completion of the Stacey Street search, Razz was arrested and transported to the sheriff's office, where he made statements, after Miranda warnings were given, that he was a drug dealer and manufactured crack cocaine. Razz then made more incriminating comments the following day, while being transported to his initial appearance, regarding his selling and manufacturing activities.

Prior to trial, Razz moved to suppress all of his incriminating statements. After a magistrate judge conducted evidentiary hearings on the motion, the district court ultimately denied suppression, concluding that Razz's statements were all admissible. The court reasoned that, although the statement to MacVeigh was the product of an unwarned custodial interrogation, it was nevertheless admissible

3

because it was voluntarily made, and accordingly, there was no taint on Razz's subsequent statements. Alternatively, the district court found that, even if the first statement was not admissible, there was a sufficient break in the stream of events such that any taint would have dissipated, thereby rendering all subsequent statements, including the one to Hermanson, admissible.

Razz also filed pretrial motions for disclosure of the CI's identity and to produce the CI for an interview. Razz argued that he planned to assert a theory of defense based on misidentification, that is, that he was not in the residences when the controlled buys took place. Thus, he asserted, he was entitled to interview the CI, who was the only eyewitness to the events that took place inside the residences. The government responded that disclosure was not warranted because the CI's testimony and observations were not relevant to the case, in which the government intended to introduce at trial only the observations of the police officers who conducted the surveillance of the residences. Moreover, the government contended, Razz's argument that an interview with the CI would further his misidentification defense was mere speculation.

At an evidentiary hearing, the magistrate judge heard the testimony of Razz, who claimed he was not in the residences during the controlled buys; Special Agent David Wilson, who observed the CI approach the residences and Razz open

the door; and Special Agent MacVeigh. The magistrate judge also conducted an in camera hearing with the special agents. In his R&R, the magistrate judge recommended that Razz's motions relating to the CI be denied based on the following findings: (1) the government justified its non-disclosure by showing a real and substantial risk of harm to the CI; (2) the CI did not play a direct role in the criminal conduct charged in the indictment; and (3) the CI could not provide any testimony that would assist Razz in defending against the indicted conduct, as a misidentification defense would not be related to his possession of drugs or drug paraphernalia. Relying on the same grounds, the magistrate recommended denying Razz's motion to produce the CI for an interview. Over Razz's objections, the district court adopted the magistrate judge's recommendations as to the motions relating to the CI.

After a jury trial, Razz was convicted of all three counts. With an adjusted offense level of 37 and a criminal history category VI (based both on 18 criminal history points and Razz's status as a career offender, U.S.S.G. § 4B1.1), Razz faced an advisory Guidelines range of 360 months' to life imprisonment. The district court sentenced him to a term of 240 months on Count One, a term of life imprisonment on Count Two, and a term of 360 months on Count Three, with the sentences to run concurrently. This appeal followed.

5

On appeal, Razz first argues that the district court erred by denying his motion to suppress the statements he made to law enforcement. More specifically, he challenges the district court's ruling on the suppression of his pre-search statement to Special Agent MacVeigh, in which he said that anything found in the Stacey Street residence belonged to him and not his wife. Razz argues that because the district court found the statement was the product of a custodial interrogation and made before he received Miranda warnings, the statement should have been suppressed, irrespective of whether it was voluntarily made. We decline to address this claim since our review of the trial transcript reveals that the statement to MacVeigh was never admitted at trial. Accordingly, even if the district court erred in its analysis of Razz's pre-trial motion to suppress, any resulting error was unquestionably harmless beyond a reasonable doubt because the decision on the motion to suppress could not possibly have contributed to Razz's conviction, where the jury never heard the statement. See United States v. Arbolaez, 450 F.3d 1283, 1292 (11th Cir. 2006) (holding that the relevant inquiry of whether admission of statements obtained in violation of Miranda is harmless error depends on whether the evidence possibly contributed to the defendant's conviction).[3]

---

[3]Moreover, in his initial brief, Razz asserts no argument and cites no legal authority addressing the district court's alternative finding that the subsequent statements, including the one made to Hermanson, who testified without objection at the defendant's trial, were voluntary and not tainted by the first. Rather, he focuses his analysis solely on the admissibility of the pre-search

6

Razz also challenges the district court's analysis of his pre-trial motions concerning the CI's identity. We review the district court's decision for abuse of discretion. See United States v. Gutierrez, 931 F.2d 1482, 1490 (11th Cir. 1991) (reviewing denial of a motion to disclose the identity of a CI for abuse of discretion). The government's privilege to withhold the disclosure of "the identity of persons who furnish information of violations of law to officers charged with enforcement of that law" is well-established. See Roviaro v. United States, 353 U.S. 53, 59 (1957). Where the disclosure of a CI's identity is relevant or helpful to the defense of an accused, or is essential to a fair determination of a cause, the government's privilege must give way. Id. at 60-61. This balancing test requires the consideration of three factors: (1) the extent of the CI's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the CI; and (3) the government's

statement he made to MacVeigh. We have found that, where a party merely makes a passing reference to an issue with no arguments on its merits, the issue is deemed waived or abandoned. See United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003) (holding issue abandoned where, although the defendant made passing references to issue in brief, the references were undertaken as background to claims that he expressly advanced); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n. 6 (11th Cir. 1989) (deeming issue not argued on appeal waived, and noting that a passing reference on appeal to the issue was insufficient to properly raise it); see also United States v. Magluta, 418 F.3d 1166, 1185-86 (11th Cir. 2005) (concluding that defendant abandoned issue that was raised for first time in reply brief), cert. denied, 126 S. Ct. 2966 (2006). Given Razz's decision not to challenge the admissibility of the other statements on appeal, we need not, and do not, analyze the admissibility of the other statements.

interest in nondisclosure. Gutierrez, 931 F.2d at 1490 (expounding on Roviaro balancing test).

It is the defendant's burden to establish that a CI's testimony "would significantly aid in establishing an asserted defense." United States v. Tenorio-Angel, 756 F.2d 1505, 1511 (11th Cir. 1985) (internal citations omitted). We have found that a defendant's "[m]ere conjecture or supposition about the possible relevancy of the informant's testimony" is insufficient to satisfy the Roviaro test and warrant disclosure. Id.

Again, Razz was indicted on one count of maintaining a drug-involved premises and two counts of possessing with intent to distribute cocaine base. Notably, he was not charged with crimes stemming from the drug buys themselves. Cf. Roviaro, 353 U.S. at 62-64 (finding disclosure warranted where charges were based on drug sale in which CI was involved). On the first Roviaro factor, Razz has not met his burden. The CI's controlled buys played no direct relationship to the criminal conduct for which Razz was charged, but rather served solely as the basis to secure the search warrants of Razz's residences. Cf. United States v. Alfonso, 552 F.2d 605,618 (5th Cir. 1977) (holding that disclosure of CI used to secure a wiretap order was not required, as CI did not participate in the activity for which the defendant was charged).

Turning to the second factor, Razz has not shown that the CI's testimony would aid him in defending against the charged crimes. Even if the CI would testify that Razz was not present during the drug buys -- a wholly speculative proposition -- Razz's misidentification defense simply is not related to his possession of the contraband drugs and drug paraphernalia discovered at his home. The CI's testimony in support of such a defense would have no effect, let alone a beneficial effect, on Razz's defense against the charged crimes, which did not include the drug sales to the CI. Moreover, Razz's suggested defense would not contradict the overwhelming other evidence of his guilt, including his confessions, and the drug paraphernalia discovered at his residence. Cf. Gutierrez, 931 F.2d at 1491 (finding disclosure not warranted after concluding that, although the CI was the only witness who could refute officer's testimony, the defendant failed to show that the CI's testimony would contradict overwhelming other evidence of the defendant's guilt).

The last factor to consider under Roviaro is the government's interest in nondisclosure. The magistrate judge found, after an in camera conference with the special agents, that the risk to the CI was real and substantial if his identity were to be disclosed. As the appellant, it is Razz's responsibility to perfect the appellate record. See Gutierrez, 931 F.2d at 1491. ("It is elementary that appellants must

perfect the record so as to support the issues which they present on appeal."); Vaughn v. Britton, 740 F.2d 833, 835 (11th Cir. 1984) ("It is the duty of the appellant to perfect his appeal by seeing that a complete record is filed in the appellate court which reflects the points upon which he seeks review.").

Although we are unable to review the in camera proceedings, we have reviewed the issue in light of the representations made in the briefs and the district court's statements in open court. Gutierrez, 931 F.2d at 1491 (on third Roviaro factor, where appellants failed to include in the record on appeal sealed in camera affidavits, reviewing representations in briefs and district court's statements and discerning no abuse of discretion in denial of motion to compel the government to disclose identity of CI). On the record before us, we are satisfied that the district court did not abuse its discretion by denying the motion to disclose the CI's identity or Razz's related motion to produce the CI for an interview.

Finally, Razz argues the district court erred by allowing the government to present testimony about the CI and the CI's controlled buys of crack cocaine at Razz's residences. We review a district court's ruling on the admission of evidence for abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or

10

has applied the wrong legal standard." United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc), cert. denied, 125 S.Ct. 2516 (2005).

Razz asserts that testimony about the CI and the CI's controlled buys should have been excluded under Rule 403 of the Federal Rules of Evidence, which provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." In reviewing a Rule 403 issue, we view "the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." United States v. Jernigan, 341 F.3d 1273, 1284 (11th Cir. 2003) (quotations omitted). "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992). And we have recognized that any unfair prejudice resulting from the admission of probative evidence may be mitigated by a limiting instruction. United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997).

Here, the testimony about the CI's drug buys in Razz's residences on Penny Lane and Stacey Street was relevant to show that Razz maintained a drug-involved premises, as charged in the indictment, and that the discoveries of contraband and drug paraphernalia on his premises were not isolated incidents. We are satisfied

11

that any prejudice Razz suggests he suffered was adequately mitigated by the district court's limiting instruction to the jury to bear in mind, when deciding the case, that the CI did not testify. Quite simply, on the record before us, Razz has not established an abuse of discretion relating to the testimony about the controlled drug buys.[4]

**AFFIRMED.**

---

[4]Even if we found an abuse of discretion, any error would be harmless, in light of the overwhelming other evidence of Razz's guilt, including his confessions, and the discovery of drug paraphernalia at his residence, suggesting that he was running a crack cocaine manufacturing operation. Cf. United States v. Harriston, 329 F.3d 779, 789 (11th Cir. 2003) (noting that an error in admitting evidence is harmless where there is overwhelming evidence of guilt).